# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ROSE STAGGERS,**

    **Plaintiff,**

v.                                      Case No. 8:08-cv-1766-T-TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**

_____/

## O R D E R

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

### I.

Plaintiff was forty-six (46) years of age at the time of her administrative hearing in October 2007. She stands five feet, four inches tall and weighed 178 pounds. Plaintiff has a high school education. Her past relevant work was in hotel housekeeping. Plaintiff applied for disability benefits and Supplemental Security Income payments in October 2004,[1] alleging disability as of September 9, 2004, by reason of degenerative disc disease in her neck and

---

[1] It appears there were subsequent SSI applications filed in March 2006.

back, hypertension, and a vitamin B-12 deficiency. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

Plaintiff claimed disability as of September 9, 2004. She acknowledged working past that date in housekeeping and at a desk job. In essence, Plaintiff testified that she is unable to work due to constant neck and back pain. By her account, her whole body aches and she suffers numbness and tingling also. She has aches in her knees, feet, and also suffers from headaches. Pain medication has not been of much help lately and it causes her to have stomach problems. Plaintiff testified that she sometimes feels depressed and has thought of suicide. In 1997 or 1998 she threatened to kill herself on her job at a hospital and received some counseling. However, she makes no claim she is disabled by reason of her mental condition. Plaintiff testified she can lift ten to fifteen pounds, stand ten to fifteen minutes, and sit thirty-five to forty-five minutes. She lives with her sister and occasionally helps with laundry and cooking. She does not do grocery shopping alone because she cannot carry the items or push the cart, but she will go with her sister. On a daily basis, she watches television, reads, and will occasionally visit with friends. (R. 454-62).

The ALJ next took testimony from Tennyson Wright, a vocational expert (hereinafter "VE"). The VE testified on a hypothetical of an individual capable of light exertional work with a sit/stand option, and occasional stooping and climbing stairs but no squatting, kneeling,

crawling, nor climbing of ropes, ladders, or scaffolds. According to the VE, such individual could not perform Plaintiff's past work, although on such hypothetical, the individual could perform work as a small products assembler, parking lot attendant, and a cashier. On an assumption that such individual could only lift fifteen pounds, the VE opined that the person could still perform work as a parking lot attendant, cashier, and small products assembler. On an assumption that such individual could lift only ten pounds, never look down, turn her head, look up, hold her head in a static position with no twisting, stooping, crouching, climbing ladders or stairs, and likely to miss more than four days per month, such individual could neither perform Plaintiff's last work nor any other job in the national or local economy. (R. 462-65).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. By his decision of November 30, 2007, the ALJ determined that while Plaintiff has severe impairments related to degenerative disc disease of the neck and lower back, vitamin B-12 deficiency and obesity, she nonetheless had the residual functional capacity to perform light exertional work with a sit/stand option, with occasional stooping and climbing stairs but no climbing ropes, ladders, or scaffolding, squatting, kneeling or crawling. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 18-27). The Appeals Council considered additional evidence and denied Plaintiff's request for review.

3

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*,

445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

Generally, Plaintiff complains that the ALJ erred in his credibility finding in that he: (1) mischaracterized the evidence in assessing Plaintiff's credibility; (2) identified inconsistencies which were not inconsistencies; (3) claimed that examinations were normal when many examinations had positive findings; (4) claimed that injections overall were successful when the record suggests that injections only worked on occasion; and (5) wrongly claimed that Plaintiff had applied for unemployment compensation.

Specifically, on the allegations that the ALJ mischaracterized the evidence, Plaintiff contends that the ALJ's finding that the MRI of the cervical spine in June 2006 was normal misreads the report which revealed disc dehydration with moderate disc narrowing of the

5

cervical spine and mild foraminal stenosis at C3-4 and disc protrusion at C4-5. She cites another MRI from October 2004 which revealed a mild bulge and desiccation at L5-S1. In a epidurogram performed in October 2006 there is a diagnosis of lumbar radiculitis and in 2006, another MRI showed desiccation at L5-S1 with significant bulge. Additionally, she urges that the ALJ's conclusion that Plaintiff's vitamin B-12 levels were generally normal is unsupported because on at least two occasions, her levels were abnormal.

As for the purported inconsistencies in Plaintiff's reporting to her doctors, she urges that any inconsistencies in her reports to Dr. Ananthakrishnan and Dr. Fuoco in February 2007 are "most likely explained by the fact that her anemia and B12 symptoms were doing well and that her back was doing poorly at the very same time."

As for the ALJ's finding that most exams were normal, she urges that such is inaccurate because on at least thirteen occasions in the records, doctors made at least one abnormal finding and thus the ALJ's conclusion does not support her lack of credibility. Similarly she chastises the ALJ for concluding that her injections overall were successful, when in fact on some occasions they did not work.

She next argues that the ALJ incorrectly concluded that she had applied for unemployment benefits as there was nothing in the record to support this. In sum, she urges that the ALJ's finding on the credibility is unsupported by the substantial evidence and the case should be remanded for further credibility assessment. (Doc. 17 at 10-13).

Beyond the credibility issue, Plaintiff claims that the ALJ erred in failing to consider a closed period or a different onset date for her disability given that she did work at the substantial gainful activity level after her alleged onset date. Thus, she urges the ALJ should

6

have considered a closed period of disability between her alleged onset date in September 2004 and her work in the Fall of 2005. Beyond that, the ALJ should have considered her disability on an amended onset date after her last gainful employment in the Spring of 2006. She urges a remand is appropriate for further consideration of these matters. *Id.* at 14.

In response, the Commissioner urges that the medical record, clinical findings, and opinions from Plaintiff's doctors support the ALJ's conclusion that Plaintiff was not fully credible in claiming she was incapable of any work. While there was evidence that she was incapable of work for a time after she initially sought treatment for her back pain and she had impairments imposing functional limitations, on the whole, the record supported the ALJ's credibility finding and his finding that she was capable of a reduced range of light work. On the finding concerning unemployment, the Commissioner urges that such was not the sole basis for evaluating Plaintiff's credibility and the whole of the record otherwise supports the decision. As for the closed period of disability and the alleged failure of the ALJ to consider a different onset date after she stopped work in 2006, the Commissioner again cites to medical records and urges that the claim is without merit since she simply fails to prove her disability on any date pertinent to this claim. (Doc. 18 at 9-16).

Upon consideration of the decision in light of the medical evidence, I am left to conclude that the ALJ adequately assessed Plaintiff's subjective complaints and discounted the same on the bases of the objective medical record, clinical findings, and opinions from Plaintiff's doctors. As discussed below, Plaintiff reads the decision differently than I do and regardless of any incorrect conclusions about the medical record made by the ALJ, the

7

Commissioner is correct that on the whole, it supports the conclusion that Plaintiff overstated her limitations and was not credible to the extent that she was disabled from all work.

Plaintiff first argues that the ALJ mischaracterized the objective evidence concerning her spine and vitamin B-12 deficiency. In particular, she complains that the ALJ's finding that the MRI of the cervical spine in June 2006 was "normal" misreads the report which revealed disc dehydration with moderate disc narrowing of the cervical spine and mild foraminal stenosis at C3-4 and disc protrusion at C4-5. However, a fair reading of the decision reflects that the ALJ never described Plaintiff's cervical spine as "normal." More significantly, what the ALJ actually said about the report reflects the ALJ accurately addressed the findings. *Cf.* (R. 22 and 235). Even though not cited by the ALJ to discredit the Plaintiff, I find that the results from the two lumbar MRIs here cited by Plaintiff actually serve to support the ALJ's conclusion that the severity of Plaintiff's pain and limitations were not supported by the objective findings.[2]

As for the ALJ's handling of her vitamin B-12 readings, while he perhaps inappropriately characterized the blood tests as "generally in the normal range" when two of the four blood tests cited indicated that Plaintiff had below normal vitamin B-12 levels, such

---

[2]The MRI performed in September 2004 reported normal findings at L1 through L5 and mild disc dessication at L5-S1 with broad based disc bulge. (R. 404). While Plaintiff was thereafter kept off work for a time, ultimately her doctor returned her to work with restrictions. Later, Dr. Slomka referenced an MRI of March 15, 2006, revealing the same problem at L5-S1 but no disc herniation or stenosis. He referred her to Dr Fuoco for an epidural steroid injection. (R. 212, 216). As the decision reflects, the ALJ credited Plaintiff with impairments in her neck and low back which could give rise to her pain complaints but not to the extent claimed. These additional MRIs and the records from the treating doctors employing them only serve to support that conclusion.

8

results were otherwise accurately reported in the decision by the ALJ. More importantly, Plaintiff fails to demonstrate any significant error in this. Again, the ALJ credited Plaintiff with a severe condition in this regard, but not to the extent that it rendered Plaintiff disabled. Even if the ALJ spoke too loosely about these blood tests, Plaintiff makes no showing that the ultimate conclusion on credibility is unsupported or otherwise should be reversed.

As for the ALJ's purported use of inconsistencies in Plaintiff's reporting to her doctors, T. Ananthakrishnan and Glenn Fuoco, it appears counsel misreads the decision. I nowhere find where the ALJ made any such comparison between what Plaintiff was reporting to these doctors in order to diminish her credibility. To the extent that the ALJ addressed what Plaintiff reported to Dr. Ananthakrishnan in February 2007, the ALJ reported it accurately. *Cf.* (R. 23 and 164). In February 2007 Plaintiff was reporting thoracic and back problems to Dr. Fuoco. (R. 186). However, such is not even specifically mentioned by the ALJ, nor is it contrasted with the report to Dr. Ananthakrishnan.

As for the ALJ's purported claim that most examinations were normal, again, I cannot find in the decision such conclusion by the ALJ in support of the determination that Plaintiff was not fully credible. On the contrary, the ALJ recognized Plaintiff had a number of problems with her cervical and lumbar spine as demonstrated by the objective and clinical findings. As he viewed her condition, such impairments were aggravated by her obesity and imposed a number of limitations, but not to the extent that they rendered Plaintiff disabled from all work. While Plaintiff cites to thirteen reports which she claims reflect at least one abnormal finding and she urges that such undermines the conclusion that the objective findings serve to discredit her subjective testimony, that decision was clearly made from the

9

record as a whole. By my review, when considered as a whole, the ALJ could cite to the lack of objective and clinical support for the claim of total disability.

While the ALJ did cite to a couple of positive notations in reports by Dr. Fuoco, Plaintiff's treating physiatrist, that pain injections had helped alleviate some of the pain in her back, I cannot find in the decision the purported finding that "the injections overall were successful" or "entirely successful" as here alleged. In any event, as for those instances cited by the ALJ, his recitation of the findings of Dr. Fuoco is reasonably accurate. *Cf.* (R. 23 and 134, 198). By my review of the full course of treatment, the various injections offered Plaintiff some relief but were no cure for her neck or back pain. Often she reported a reduction in pain but no long term cure for either her back or neck. In any event, the ALJ's consideration of this course on pain management was not inappropriate, and Plaintiff does not demonstrate that such was improperly used by the ALJ.

Finally, Plaintiff urges that the record did not support that she had applied for unemployment benefits and the ALJ improperly considered such in assessing her credibility. I tend to agree with Plaintiff on this complaint. By my consideration, absent giving Plaintiff the opportunity to address his post-hearing investigation of a national directory for determination of whether she had applied for unemployment benefits, such should not have been considered by the ALJ in discounting Plaintiff's credibility. However, as the Commissioner urges, this was just one of many reasons listed by the ALJ for his conclusion that Plaintiff was not disabled from all work. When the balance of the record considered by the ALJ is reviewed, his credibility finding as well as the conclusion on Plaintiff's RFC are more than adequately supported regardless of this consideration.

10

Lastly, Plaintiff's argument based on Social Security Ruling 83-20, that the ALJ should have considered whether she was entitled to a closed period of disability for the period between her alleged onset date and when she returned to substantial gainful activity in the Fall of 2005 or a new period of disability based on an onset date after she stopped working in the Spring of 2006, fails for the simple reason that Plaintiff has failed to demonstrate any continuous period of twelve months or more when she was disabled. In the circumstances, this ruling is simply inapplicable.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 11th day of February 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record